Case: C-13-CV-26-000483 COMPLAINT Filed: 5/1/2026

**CIRCUIT COURT OF MARYLAND FOR HOWARD COUNTY**
9250 Judicial Way
Ellicott City, MD 21043

**Case No.:** C13CV26000483

**CHARLES PATRICK VENANZI, pro se.**
6416 Skipton Dr.
Hanover, MD 21076

*Plaintiff,*

v.

**UTZ QUALITY FOODS, LLC,** a Delaware corporation,
900 High Street,
Hanover, Pennsylvania 17331
*Serve on Resident Agent:*
Registered Agent Solutions, Inc.
401 E. Pratt St., Suite 2424
Baltimore, MD 21202

and

**UTZ BRANDS, INC.,** a Delaware corporation,
900 High Street,
Hanover, Pennsylvania 17331
*Serve on Resident Agent:*
Registered Agent Solutions, Inc.
838 Walker Road Suite 21-2
Dover, Kent County, Delaware 19904

and

**TARGET CORPORATION**
1000 Nicollet Mall
Minneapolis, MN 55403
*Serve on Resident Agent:*
The Corporation Trust Incorporated
2405 York Rd Ste 201
Lutherville Timonium, MD 21093-2264

*Defendants.*

FILED
2026 MAY -1 P 2:12
CIRCUIT COURT
HOWARD COUNTY

**COMPLAINT AND DEMAND FOR JURY TRIAL**

*Pro se* Plaintiff, Charles Patrick Venanzi, files this Complaint against Defendants Utz Quality Foods, LLC, Utz Brands, Inc., and Target Corporation (collectively "Defendants"), and in support, alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this civil action against Defendants for damages exceeding $75,000 arising from a life-threatening choking incident and permanent personal injuries sustained by the Plaintiff after consuming a food product manufactured, distributed, and sold by the Defendants.

2. This action is founded upon theories of strict products liability, negligence, and breach of express and implied warranties regarding a defective and unreasonably dangerous food product: Utz Old Fashioned Sourdough Hards Pretzels (hereinafter "the Product").

3. The product was manufactured and sold in a defective and unreasonably dangerous condition due to a foreign thread-like substance embedded within a pretzel (Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8C). Defendants were negligent in failing to exercise reasonable care in the manufacturing, inspection, and quality control of the food product, allowing it to become contaminated.

4. Furthermore, Defendants breached the implied warranty of merchantability, as the product was not fit for its ordinary purpose of human consumption. Defendants also breached express warranties that the food was safe and wholesome for the public.

5. As a direct and proximate result of the Product's defect and Defendants' failure to fulfill their legal and contractual obligations, Plaintiff experienced a life-threatening, traumatic choking incident. This event resulted in significant and permanent physical injury (Exhibits

Volume II - 13a, 14, 15, 16, & 17), profound psychological distress (Exhibits Volume I - 5a, 5b, 5c, 5d, & Exhibit Volume II - 13b), and substantial financial harm (Exhibit Volume II - 19, and Exhibits Volume III - 23, 24, 25, & 26), for which Plaintiff seeks full compensatory and punitive relief to the extent permitted by law.

## THE PARTIES

6. Plaintiff, Charles Patrick Venanzi, is a resident of Hanover, Maryland, residing at 6416 Skipton Dr. Hanover, MD 21076.

7. Upon information and belief, Defendant, Utz Quality Foods, LLC, is a Delaware limited liability company (Exhibits Volume I - 9a & 9b) and the primary manufacturing subsidiary that produced the defective Product, with its principal place of business in Hanover, Pennsylvania, listed as 900 High Street, Hanover, Pennsylvania, 17331 is a foreign corporation registered with the Maryland State Department of Assessments and Taxation (SDAT) (Dept. ID: Z17686882) and, at all times relevant, did conduct such business.

8. Upon information and belief, Defendant Utz Brands, Inc., is a Delaware corporation (DE File Number: 7879729) with its principal place of business in Hanover, Pennsylvania, listed as 900 High Street, Hanover, Pennsylvania, 17331, and is the parent entity of Utz Quality Foods, LLC. responsible for the design and quality standards of the Product.

9. Upon information and belief, Defendant Target Corporation is a Minnesota corporation (Exhibits Volume I - 9c & 9d) with its principal place of business in Minneapolis, Minnesota, listed as 1000 Nicollet Mall, Minnesota, 55403, is a foreign corporation registered with the Maryland State Department of Assessments and Taxation (SDAT) (Dept. ID: F04056339) doing substantial business in Maryland, and was the retailer that placed the

defective Product into the final stream of commerce.

10. Upon information and belief, Defendants manufacture, market, and/or distribute food products, including the product at issue, to consumers in Maryland and throughout the United States.

11. Pursuant to the Maryland Uniform Contribution Among Joint Tort-Feasors Act, all Defendants are jointly and severally liable for the Plaintiff's damages. (See also: Phipps v. General Motors Corp., 278 Md. 337 (1976))

12. Defendant Utz Quality Foods, LLC. may be served by serving their Resident Agent, Registered Agent Solutions, Inc., located at 401 E. Pratt Street, Suite 2424, Baltimore, Maryland 21202.

13. Defendant Utz Brands, Inc. may be served by serving their Resident Agent, Registered Agent Solutions, Inc., located at 838 Walker Road Suite 21-2, Dover, Kent County, Delaware 19904.

14. Defendant Target Corporation may be served by serving their Resident Agent, The Corporation Trust, Inc., located at 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093-2264.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to Md. Code Ann., Cts. & Jud. Proc. § 1-501, because the amount in controversy exceeds the $30,000 threshold for the exclusive jurisdiction of the Circuit Court, exclusive of interest and costs.

16. This Court has personal jurisdiction over all Defendants pursuant to the Maryland Long-Arm Statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, because Defendants: (a) Transact

substantial business and perform services within the State of Maryland; (b) Contracted to supply goods, specifically food products, within the State of Maryland; and (c) Caused tortious injury within the State of Maryland through the sale of a defective and unreasonably dangerous product.

17. Venue is proper in Howard County pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201, because the causes of action arose in Howard County, where the Product was purchased and where the injuries occurred, and because Plaintiff resides in Howard County, Maryland.

18. The Defendant, Utz Quality Foods, LLC, is registered as Department ID (DID) number Z17686882 (Exhibit Volume I - 9b) with the State of Maryland, regularly conducts business in and around the State of Maryland, and Maryland is listed as one of Utz's "core" geographic business areas.

19. This action is timely filed within the applicable three-year statute of limitations pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-101, as the injuries sustained by the Plaintiff occurred on August 1, 2023.

## STATEMENT OF FACTS

20. On or about July 20, 2023, Plaintiff purchased a 26 oz. barrel of UTZ Old Fashioned Sourdough Hards Pretzels (Exhibits Volume I - 3a, 3b, & 3c), lot OC 4/2/2023 23173020527 05:40 (Exhibits Volume I - 4a & 4b), from a Target retail store located in Ellicott City, Howard County, Maryland. (See: *Giant Food, Inc. v. Washington Coca-Cola Bottling Co., Inc.*, 273 Md. 592 (1975))

21. At the time of purchase, the product's packaging was intact (in a sealed, tamper-proof plastic barrel), and the Product was in the same condition as when it left the possession and control of the Defendants, in its original, unaltered condition.

22. On August 1, 2023, while Plaintiff was consuming the product manufactured and distributed by Defendant, in its intended and foreseeable manner, Plaintiff encountered an unintended and deleterious foreign substance (extrinsic to the food's natural ingredients—that was deeply embedded within the baked dough of the product) (Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8c). Specifically, two adulterated pretzel fragments were interconnected by a thread-like material (contaminant) (Exhibits Volume I - 1a & 1b), creating a hazardous condition that became lodged in the Plaintiff's airway. The product was defective and unfit for human consumption in that it contained foreign contaminants. As the Plaintiff attempted to swallow the contaminated pretzel, the embedded foreign substance caused an immediate, life-threatening choking incident and subsequent respiratory distress.

23. The choking incident persisted for approximately four minutes, during which Plaintiff suffered from acute hypoxia (oxygen deprivation) and extreme physical distress. This prolonged obstruction resulted in immediate trauma, including severe internal bruising, abrasions, and scratching of the laryngeal area, intense localized pain, and significant soft-tissue swelling.

24. As a direct and proximate result of the sustained oxygen deprivation and the intense, sudden, and high-pressure physical stress on the body from the choking incident, Plaintiff suffered neurological impairment, specifically cranial nerve damage affecting the eye muscles, presenting as acquired traumatic ptosis, aponeurotic ptosis, or "droopy eyelid" syndrome, whereas the levator palpebrae superioris (LPS) muscle does not work properly, causing the eyelid to droop (Exhibits Volume I - 5a & 5b) which is explicably linked to the mechanical pressure and hypoxic stress of the four-minute chocking struggle, along with other ongoing medical complications.

25. The choking trauma resulted in the Plaintiff experiencing hysterical neurosis (i.e.; conversion disorder) exhibited through temporary left-eye muscle paralysis (Exhibits Volume I -

5a & 5b), which periodically persisted for two months per occurrence, following the incident. (Blinder, supra, at 316; Modlin, Psychiatry and the Law, in Modern Legal Medicine, Psychiatry and Forensic Science 721, 724 (W. Curran, A. McGarry, C. Petty eds. 1980); Independent Tort, supra note 94, at 1250-51.

26. Upon violently dislodging the obstruction from his airway, Plaintiff examined the remains of the food and discovered a foreign, thread-like substance deeply embedded within the pretzel. This contaminant, measuring approximately 59.2mm in length (Exhibits Volume I - 2a & 2b), physically tethered two distinct pieces of the hard pretzel together. This mechanical defect prevented the masticated portion of the product from being safely swallowed, directly causing the bolus to become lodged in Plaintiff's throat and obstructing his airway.

27. The trauma to Plaintiff's throat and esophagus has resulted in permanent physical injuries and chronic conditions, including but not limited to: a) Esophageal spasms and Globus pharyngis (a persistent sensation of a foreign body in the throat) (Exhibit Volume II - 14); b) Chronic dysphagia (difficulty swallowing) and chronic throat clearing (Exhibit Volume I - 7b); c) Persistent hoarseness and vocal cord strain; d) Ongoing cervical (neck) pain (Exhibit Volume II - 16) and, significant involuntary unexplained clinically significant physiological decline weight loss exceeding 10% year-over-year from 2023 through 2026 (Exhibits Volume I - 5a, 5b, 5c, & 5d), linked to anxiety, persistent gag reflex, and persistent globus pharynges condition following the choking episode (Exhibits Volume I - 5a & 5b).

28. The combination of unexplained, significant weight loss (>10%), persistent gag reflex, and globus pharyngeus (a sensation of a lump in the throat) (Exhibits Volume I - 7a & 7b) following a choking episode strongly suggests Pseudodysphagia (ICD-10 Code: 300.29/F40.298/F60.298) "fear of choking" phobia, a mental health condition, triggered by a

traumatic choking episode, causing anxiety, restrictive eating, and somatic symptoms like a constant feeling that food is stuck in the throat often triggered by acute trauma. (ref.; https://pmc.ncbi.nlm.nih.gov/articles/PMC10651804/ and https://mysemg.com/conditions-treatments/ear-nose-and-throat-issues/globus-pharyngeus, See: Sahoo S, Hazari N, Padhy SK. Choking Phobia : An Uncommon Phobic Disorder, Treated with Behavior Therapy : A Case Report and Review of the Literature. Shanghai Arch Psychiatry. 2016 Dec 25;28(6):349-352. doi: 10.11919/j.issn.1002-0829.216055. PMID: 28638212; PMCID: PMC5434294. (Exhibit 27)

29. These injuries are debilitating, permanent in nature, and have fundamentally altered Plaintiff's quality of life, requiring ongoing psychological monitoring (Exhibit 13b) and medical intervention (Exhibits Volume II - 13a, 14, 15, 16, & 17).

30. On August 2, 2023, Plaintiff notified the Defendants' Customer Care team of the incident via email, providing details and photographs. The matter was assigned incident numbers 0084836 and 0082734. (Exhibits Volume III - 20a, 20b & 21)

31. On August 24, 2023, a representative for Defendants offered to refund the purchase price and requested Plaintiff return the contaminated pretzel for inspection (Exhibit 21), via a pre-paid FedEx return shipping box (Exhibit Volume I - 6 & Exhibit Volume III - 22). Plaintiff declined this offer and retained the defective food product for evidentiary purposes (Exhibit Volume III - 21, pg. 3). Plaintiff has maintained the Product and the foreign substance in a secure, climate-controlled environment to preserve its original condition for forensic analysis and trial.

32. Subsequent to the notification provided on August 2, 2023, the Defendants, acting through their designated agents and representatives, acquired actual knowledge of the defective condition of the Product and the resulting physical and psychological injuries sustained by the Plaintiff. Defendants' internal investigation and their continued communication with the Plaintiff

regarding this incident confirm their awareness of the hazard, yet they have failed to take corrective measures or fulfill their obligations to the consumer.

33. Following the incident, Plaintiff provided formal notice of the claim and requested that the Defendants address the damages arising from the defective Product.

34. In addition to physical injuries (Exhibit Volume II - 13a), Plaintiff suffered profound psychological harm (Exhibit Volume II - 13b), including "traumatic neurosis," precipitated by the life-threatening choking episode. Since December 2023, Plaintiff has remained under the consistent care of licensed mental health professionals to treat severe anxiety (Exhibit Volume II - 13b) and a diagnosed Post-Traumatic Choking Phobia (ICD-10 Code: 300.29/F40.298/F40.298) (Exhibit Volume III - 27). This trauma manifests in chronic anxiety reactions, acute nervousness, and persistent physiological tension directly linked to the incident. (See Blinder, Psychiatric Aspects of Traumatic Injuries, 1 Law. Med. J. 313, 315 (2d ed. 1973); Smith & Solomon, supra).

35. Plaintiff's psychic injuries have resulted in extreme emotional, relational, and phobic trauma, specifically an avoidant-restrictive eating pattern and a persistent fear of consuming solid foods. This psychological impairment has caused significant physical deterioration, including a documented year-over-year weight loss exceeding 10% of his total body weight from 2023 through 2026. This involuntary physical weight decline is a direct manifestation of the emotional trauma sustained. (See *Belcher v. T. Rowe Price Foundation, Inc.*, 329 Md. 709 (1993)). This is the landmark Maryland case that confirms that a "psychological injury" is compensable if it results in an "objective physical manifestation".

36. From August 30, 2023, through the present, Plaintiff has been under the continuous and ongoing care of a multidisciplinary team of medical and psychological professionals (Exhibits Volume II - 13b & 13b). These treatments are essential to address the complex physical and

psychiatric injuries—both acute and permanent—directly and proximately caused by the Defendants' defective product.

37. The neurological impairment and resulting visual disturbances (ptosis) directly interfere with the Plaintiff's ability to perform essential vocational tasks requiring prolonged visual acuity and complex technical analysis, high-level cognitive processing, and prolonged interaction with digital interfaces, resulting in lost wages to date in an amount that exceeds $75,000 for the present value and all future lost earning capacity and wages (Exhibit Volume II - 19, and Exhibits Volume III - 23, 24, 25, & 26).

38. Plaintiff continues to incur medical expenses and economic losses in an amount that exceeds $75,000, the total of which will be proven at trial. (Exhibits Volume II - 13a, 13b, & 19)

**COUNT I – STRICT PRODUCT LIABILITY** (Against All Named Defendants)

39. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

40. Defendants are in the business of manufacturing, processing, distributing, and selling food products and are strictly liable for physical harm caused to a consumer by a product sold in a "defective condition unreasonably dangerous" to the user. Under Maryland law, as established in *Phipps v. General Motors Corp.*, 278 Md. 337 (1976), the legal inquiry focuses exclusively on the condition of the product at the time it left the Defendants' control, regardless of the level of care exercised by the manufacturer.

41. The Product (Lot OC 4/2/2023; 23173020527) was manufactured and sold by Defendants and reached the Plaintiff without substantial change in its condition. At the time of

purchase and consumption, the Product remained in its original, factory-sealed, and unaltered form, proving that the contaminant was introduced during the manufacturing and baking process.

42. Pursuant to the Maryland Uniform Contribution Among Joint Tort-Feasors Act, all Defendants—including the Utz manufacturing entities (Exhibits Volume I - 9a & 9b) and Target Corporation (Exhibits Volume I - 9c & 9d) are jointly and severally liable for the Plaintiff's total damages. Each Defendant participated in the chain of distribution of an unreasonably dangerous product. Specifically, Defendant Target Corporation is liable as the retailer because the Product bore its own implied and express warranties of safety and merchantability, and the defect was not discoverable by the Plaintiff prior to consumption. Under the standards of *Phipps v. General Motors Corp.*, 278 Md. 337 (1976) and *Giant Food, Inc. v. Washington Coca-Cola Bottling Co.*, Inc., 273 Md. 592 (1975), the entire chain of distribution is responsible for the defect, ensuring Plaintiff can seek full satisfaction of any judgment from any named Defendant.

43. The Product consumed by Plaintiff was manufactured, distributed and sold by Defendants in a defective and unreasonably dangerous condition. The presence of a 59.2mm foreign thread-like contaminant—firmly embedded and baked into the pretzel dough (Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8c) rendered the Product unfit for its intended purpose of human consumption and created a mechanical hazard that directly caused an airway obstruction. (See *Giant Food, Inc. v. Washington Coca-Cola Bottling Co., Inc.*, 273 Md. 592 (1975))

44. The Product violated the "Consumer Expectation Test" adopted in Maryland. Under Bryer v. Rath Packing Co., 221 Md. 105 (1959), the rigid "Foreign-Natural Test" is subordinate to what an ordinary consumer would reasonably expect to find in the product as it is marketed. Even if Defendants argue that industrial debris is an inevitable or 'natural' byproduct of high-speed factory processing, a product is legally defective if it is dangerous to an extent beyond that which

would be contemplated by the consumer. No reasonable consumer expects a factory-sealed, baked sourdough pretzel to contain a 59.2mm non-food mechanical tether. A thread-like industrial contaminant is not a substance 'natural' to the ingredients of a sourdough pretzel, and a consumer has no reasonable expectation that a baked snack would contain a 59.2mm mechanical tether. (Exhibits Volume I - 1a & 1b) This industrial contaminant is entirely extrinsic to the natural ingredients of the product. (See *Miller v. Meadville Food Serv., Inc.*, 98 A.2d 452 (Pa. Super. 1953))

45. The contaminant further violates the "Foreign-Natural Test," as a thread-like substance is entirely extrinsic and not naturally occurring in the ingredients or standard manufacturing process of a sourdough pretzel. (See *Tardella v RJR Nabisco*, 178 AD2d 737, 737-738 [3d Dept 1991].)

46. This matter is evidentiary distinct from cases where the instrumentality of injury is lost. Plaintiff has retained physical possession of the two defective adulterated pretzel fragments and the embedded 59.2mm thread (Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8c), even though the Defendant had requested the return of the foreign thread-like contaminant (Exhibit Volume I - 6 & Exhibit Volume III - 22) This preserved evidence serves as prima facie proof that the thread-like material is a foreign contaminant—specifically, a substance neither natural to the product's ingredients nor a standard component of the manufacturing process for Utz brand pretzels. Plaintiff's refusal to return the evidence to the Defendants (Exhibit Volume III - 21) was a necessary action to prevent the potential spoliation of evidence and to ensure the integrity of forensic analysis. Consequently, the presence of this adulterant establishes a direct causal link to the Plaintiff's injuries, satisfying the evidentiary standards set forth in *Frier v. Laube's Old Spain*, 265 App. Div. 402 (4th Dept. 1943).

47. As a direct and proximate result of the Product's defective condition, Plaintiff sustained severe and permanent physical and psychological harm and that the Defendants Product was the sole proximate cause of the injuries described. These damages include, but are not limited to: a) Acute Physical Trauma: Including hypoxia (oxygen deprivation), severe laryngeal bruising, and cranial nerve damage affecting ocular muscles; b) Permanent Physiological Impairment: Including chronic dysphagia (difficulty swallowing), esophageal spasms, and globus pharyngis; c) Severe Psychological Injury: Including Post-Traumatic Choking Phobia (ICD-10 Code: 300.29/F40.298/F40.298) and "traumatic neurosis", which manifested physically in a documented greater than 10% loss of total body weight year-over-year from 2023 through 2026 (Exhibits Volume I - 5a, 5b, 5c, 5d, and Exhibit Volume III - 27). Under *Belcher v. T. Rowe Price Foundation, Inc.*, 329 Md. 709, 621 A.2d 872 (1993), Plaintiff is entitled to recover for these psychological injuries as they have resulted in clear physical manifestations of the psychological traumatic neurosis. (See also: *Bryer v. Rath Packing Co.*, 221 Md. 105 (1959))

48. Defendants are strictly liable for these damages regardless of the degree of care exercised in the preparation of the Product, as the Product was defective and unfit for its intended purpose at the time it left Defendants' control. (See *Phipps v. General Motors Corp.*, 278 Md. 337 (1976); Restatement (Second) of Torts § 402A(2)(a); *Zenobia v. Owens-Illinois, Inc.*, 325 Md. 420 (1992), and *Giant Food, Inc. v. Washington Coca-Cola Bottling Co., Inc.*, 273 Md. 592 (1975))

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount exceeding $75,000, plus costs and any other relief the Court deems just. (See "Prayer of Relief" Section for full details related to all Counts)

## **COUNT II – NEGLIGENCE** (Against All Named Defendants)

49. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

50. At all times relevant, Defendants, as commercial manufacturers and retailers of food products, owed a non-delegable duty of reasonable care to all foreseeable consumers, including the Plaintiff. This duty required Defendants to ensure that food products placed into the stream of commerce were wholesome, fit for consumption, and free from hazardous foreign contaminants.

51. This duty of care, recognized under Maryland law, required Defendants to implement and maintain rigorous quality control, testing, and inspection protocols—including Hazard Analysis and Critical Control Points (HACCP) and Current Good Manufacturing Practices (CGMP) - to detect and remove hazardous materials from the production line before the products were placed into the stream of commerce.

52. Defendants breached this duty of care by: a) Failing to maintain a manufacturing process free from contamination or allowing foreign objects to contaminate the product during manufacturing (Exhibits Volume I - 1a, 1b, 8a, 8b & 8c); b) Failing to meet the expected standard of care, such as neglecting to conduct adequate safety testing or implementing adequate quality control measures capable of identifying a 59.2mm foreign thread-like substance in their products before packaging and sale (Exhibits Volume I - 2a & 2b); c) Failing to utilize adequate detection technology (e.g., visual, X-ray, or optical sensors) capable of identifying a 59.2mm foreign thread-like substance (Exhibits Volume I - 2a & 2b); d) Failing to properly supervise the manufacturing and baking process, allowing a foreign object to become "baked-in" and integrated into the dough of the pretzel; e) Failing to adhere to Current Good Manufacturing Practices (CGMP) and other industry safety standards designed to prevent food contamination; f) Selling an adulterated and dangerous food product to the public, and g) Failing to warn consumers of the risk of

contamination despite having actual or constructive knowledge of manufacturing irregularities in Lot OC 4/2/2023; 23173020527 (Exhibit Volume I – 4b).

53. The presence of a nearly 60mm thread-like substance baked into a sealed consumer product is prima facie evidence of a breakdown in Defendants' quality control systems and a failure to perform reasonable inspections (Exhibits Volume I - 2a & 2b) in addition the Defendant failed to warn of such possible containments or choking hazard on their products label. Such a defect does not ordinarily occur in the absence of negligence while the product is under the exclusive control of the manufacturer.

54. Defendants owed a duty of care to the Plaintiff to ensure the product was reasonably safe for its intended use and free from defects. The Defendants' breach of their duty of care was the direct and proximate cause of the Plaintiff's choking incident and resulting injuries. The Defendants breached their duty of care by failing to implement and maintain adequate foreign material control protocols, provide sufficient employee training, and comply with established food safety management systems, including Hazard Analysis and Critical Control Points (HACCP). This failure resulted in the introduction of foreign substances into the manufacturing and distribution stages of the pretzel production process, thereby constituting negligence in their obligation to uphold food safety and product quality standards.

55. Defendant Target Corporation failed to implement reasonable shelf-inspection protocols to identify obvious packaging irregularities that could lead to contamination, and as a purveyor of food, Target owes a non-delegable duty to its guests to ensure the wholesomeness of the products it invites them to purchase. The Plaintiff alleges that the Defendant has received prior notice of similar defects in Utz products but continued to sell them.

56. As a direct result of Defendants' negligence, Plaintiff purchased and consumed the contaminated Product, leading to the catastrophic four-minute choking incident previously described. The Plaintiff experienced an intense, uncomfortable need for air (dyspnea), of which is described as "not being able to catch his breath" as his breathing became fast and shallow, and the effort to breathe increased, using accessory muscles in the neck, shoulders, and around the ribs disorientation, impaired memory, decreased concentration, and "brain fog". The injuries sustained by Plaintiff—including acute hypoxia, cranial nerve damage, chronic dysphagia, extreme tiredness and overwhelming weakness to the body after the foreign object was dislodged, and a profound psychological trauma (manifesting in a greater than 10% body weight loss year-over-year) — were a foreseeable consequence of Defendants' failure to ensure the wholesomeness of their food products. As duty was breached, the Defendants are liable to the Plaintiff for all injuries caused by the defective product. (*Llera v. Security Ins. Co. of Hartford*, 441 Md. 568 (2015) (or specifically referencing the principles from *Phipps v. General Motors Corp.*, 278 Md. 337 (1976), as it relates to the manufacturer's duty)

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount exceeding $75,000, plus costs and any other relief the Court deems just. (See "Prayer of Relief" Section for full details related to all Counts)

**COUNT III – NEGLIGENCE PER SE** (Against All Named Defendants)

57. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

58. The Federal Food, Drug, and Cosmetic Act (FD&C Act), 21 U.S.C. § 342(a)(1), prohibits the introduction of adulterated food into interstate commerce. Food is deemed

"adulterated" and subject to enforcement action under Section 402(a)(3) of the FD&C Act if it contains any deleterious substance which may render it injurious to health. FDA Compliance Policy Guide (§ 555.425) specifically identifies hard or sharp foreign objects between 7mm and 25mm as health hazards; the 59.2mm contaminant in the Product far exceeds this threshold of danger. particularly in ready-to-eat products.

59. Under the Maryland Food, Drug, and Cosmetic Act, Md. Code Ann., Health-Gen. § 21-207, a person may not hold or offer for sale any food that is adulterated. A food is adulterated if it contains any added poisonous or deleterious substance.

60. The presence of a hard or sharp foreign object, such as two hard pretzel pieces connected by a 59.2mm foreign thread-like contaminant (Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8c), renders the food "adulterated" under the FD&C Act and its implementing regulations, and unsafe for human consumption.

61. The FD&C Act is a public safety statute, and Plaintiff is among the class of persons the statute was designed to protect. These statutes are public safety measures designed to protect consumers from bodily harm. Plaintiff is a member of the class of persons these statutes were intended to protect.

62. By selling an adulterated product containing a dangerous foreign object, Defendants violated the FD&C Act. This statutory violation constitutes negligence *per se*. The Plaintiff alleges that Defendants had actual knowledge of the specific defect in the specific batch or a "conscious and deliberate" decision to ignore a high probability of injury, based on poorly addressed product line inspections or production line stop protocols after identifying the loss of PPE or industrial materials during the manufacturing of Lot OC 4/2/2023; 23173020527 (Exhibit Volume I – 4b).

63. Defendants' statutory violations and negligence *per se* were the direct and proximate cause of Plaintiff's life-threatening choking episode and permanent physical and psychological impairments..

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount exceeding $75,000, plus costs and any other relief the Court deems just. (See "Prayer of Relief" Section for full details related to all Counts)

**COUNT IV – BREACH OF WARRANTY (IMPLIED WARRANTY OF MERCHANTABILITY AND EXPRESS WARRANTY)** (Against All Named Defendants)

64. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

65. Defendants Utz Quality Foods, LLC, Utz Brands, Inc., and Target Corporation are "merchants" with respect to the food products they manufacture, distribute, and sell within the meaning of Md. Code, Com. Law § 2-104.

66. Pursuant to Md. Code, Com. Law § 2-314, a warranty that the Product was merchantable was implied in the contract for its sale. To be merchantable, the Product was required to be "fit for the ordinary purposes for which such goods are used"—specifically, safe human ingestion.

67. Under the doctrine of implied warranty, the Defendants are liable given that the Product consumed by the Plaintiff was not reasonably fit to be used for its ordinary (intended) purpose (Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8c). (Md. Code, Com. Law § 2-314; as established in PJI 2:142) "Reasonably fit" is articulated in this case as free from foreign contaminants not naturally found to be used in the manufacturing of pretzel snack products.

68. Defendant, as the manufacturer and/or distributor, is subject to a non-delegable duty to ensure its food products are wholesome and fit for human consumption. This implied warranty arises by operation of law and exists independent of contractual privity (see *Klein v. Duchess Sandwich Co., Ltd.* (1939) 14 Cal.2d 272, 93 P.2d 799). Whether the product reached the Plaintiff through a direct sale or a third-party retailer is legally immaterial. Plaintiff at all times maintained a reasonable expectation that the product was unadulterated and safe for ingestion, a standard which the Defendant failed to meet.

69. The Plaintiff used the principles and practice outlined in both the "Reasonable Expectation" and "Foreign-Natural" Tests to distinguish between substances that are natural to the snack food product and those that are foreign or 'should not be there' given the consumer's reasonable expectations of the product's wholesomeness. The Defendants are liable regardless of whether the object is considered "natural" or "foreign" in a biological sense. (Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8c)

70. Plaintiff provided timely and sufficient notice of the breach of warranty to Defendants on August 2, 2023, satisfying the requirements of Md. Code, Com. Law § 2-607(3)(a).

71. Plaintiff's claims are substantiated by the physical preservation of the foreign object at issue, distinguishing this case from the evidentiary deficiencies noted in *Kneibel v. RRM Enters.*, 506 N.W.2d 664. The retained thread-like substance constitutes extrinsic evidence of a defect (Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8c), as it is not a natural byproduct of the pretzel manufacturing process. Under the precedent of *Frier v. Laube's Old Spain*, 265 App. Div. 402, this identified foreign object confirms that the product was adulterated and was the proximate cause of Plaintiff's harm.

72. Defendant breached the implied warranty of merchantability and fitness for human consumption in that the subject pretzels were not of a merchantable quality at the time of sale. Specifically, the presence of an extraneous, thread-like contaminant—which interconnected individual pretzel fragments—created a structural defect and a latent choking hazard not reasonably expected by a consumer (Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8c). This foreign substance rendered the food adulterated and wholly unfit for ingestion. As a direct and proximate result of this breach, Plaintiff suffered acute airway obstruction and subsequent life-threatening injuries upon using the product in its intended and foreseeable manner.

73. As established in *Great Atlantic & Pacific Tea Co. v. Adams*, 232 Md. 321 (1963), Maryland law recognizes an implied warranty of wholesomeness in the sale of food. A product containing extraneous or foreign thread-like, non-food contaminants is, by definition, unwholesome and unmerchantable.

74. Defendants breached this implied warranty because the Product was not of "fair average quality" and was not fit for consumption. The presence of a 59.2mm foreign thread-like contaminant, integrated into the baked dough (Exhibits Volume I - 1a & 1b), transformed a food item into a dangerous mechanical instrument of injury. Pursuant to the standard established in *Bryer v. Rath Packing Co.*, 221 Md. 105 (1959), a product is legally unmerchantable if it contains a substance that a consumer would not reasonably anticipate a synthetic industrial tether in a sourdough pretzel. This principle completely invalidates any defense that manufacturing debris is an expected hazard of mass production. (See *Great Atlantic & Pacific Tea Co. v. Adams*, 232 Md. 321 (1963)).

75. The Defendants product was unfit for the ordinary purposes for which such goods are used. The consumer should have a reasonable expectation that a product, when used in the

customary, usual, and reasonably foreseeable manner, without regard to the feasibility of alternative designs or the manufacturer's or seller's reasonableness in marketing, is safe for consumption and breached a duty of care. The Plaintiff, through demonstration and retention of the injury-causing thread-like foreign substance even after the Defendant requested its return (Exhibit Volume I – 6 and Exhibit Volume III - 22), shows that the pretzel snack food product was not fit for its ordinary purpose and is therefore not considered to be of fair average quality.

76. Pursuant to Md. Code, Com. Law § 2-313, Defendants made express affirmations of fact and promises to the Plaintiff through their packaging, labeling, and marketing, representing the Product as "Quality" and "Old Fashioned" food fit for the public. These affirmations became part of the "basis of the bargain".

77. The Product failed to conform to these express affirmations. A product containing industrial debris is, by definition, not a "quality" food item. The presence of the contaminant fundamentally contradicted the Defendants' written and marketed guarantees of safety and excellence.

78. Defendant Target Corporation, as a specialized retailer, provided its own affirmations of safety by selecting, shelving, and marketing the Product as wholesome. Pursuant to Md. Code, Cts. & Jud. Proc. § 5-405(b)(1), the sealed container defense is inapplicable where the retailer makes express warranties or where the manufacturer is not subject to service of process (though both are joined here).

79. Plaintiff relied on these warranties when purchasing and consuming the Product.

80. Unlike cases where the evidence is consumed or lost, Plaintiff has retained the physical instrumentality of the injury (Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8c), expressly demonstrates that it is foreign and completely unrelated to the product; as such, the warranty has

been breached. This preserved evidence confirms a "latent defect" that was present at the time the Product left the Defendants' control and was not discoverable by a reasonable inspection by the consumer prior to the moment of ingestion. The Plaintiff had no reasonable expectation to anticipate that a thread-like foreign substance would be present in the Defendants manufactured and distributed snack food product. (*Deris v. Finest Food Inc.*, 198. So.2d 412(La.1967)

81. As a direct and proximate result of Defendants' breach of these warranties, the Product failed during its intended use, causing Plaintiff to suffer a life-threatening four-minute choking episode, acute hypoxia, and permanent neurological and physiological impairment, including documented weight loss exceeding 10% of total body mass, year-over-year from August 2023 to present date.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount exceeding $75,000, plus costs and any other relief the Court deems just. (See "Prayer of Relief" Section for full details related to all Counts)

**COUNT V – VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**

(MCPA) (Against All Named Defendants)

82. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

83. At all times relevant, Defendants were "merchants" and the Product was "consumer goods" as defined by Md. Code Ann., Com. Law § 13-101.

84. Defendants' distribution of an adulterated food product containing a hidden, 59.2mm thread-like contaminant ((Exhibits Volume I - 1a, 1b, 2a, 2b, 8a, 8b, & 8c) constitutes an "unfair, abusive, or deceptive trade practice" under Md. Code, Com. Law § 13-301 by making false and

misleading representations that had the capacity, tendency, or effect of deceiving consumers. Specifically, Defendants: a) Representing that the Product possessed a standard of quality or safety which it did not possess (§ 13-301(2)(iv)); b) Failed to state material facts regarding the risk of severe physical injury, including mechanical airway obstruction and laryngeal trauma, which failure deceived or tended to deceive the consumer (§ 13-301(3)); and c) Made false or misleading statements in their marketing and packaging (e.g., "Quality," "Old Fashioned") that had the capacity, tendency, or effect of deceiving consumers.

85. Pursuant to the standard set forth in *Citaramanis v. Hallowell*, 328 Md. 142 (1992), Plaintiff has suffered "actual injury and loss" as a direct result of Defendants' deceptive practices. These injuries include: a) Economic Loss: Documented medical expenses and lost wages (Exhibits Volume I - 5a, 5b, 5c, 5d, 7a, 7b, and Exhibits Volume II - 13a, 13b, 14, 15, 16, 17, 19, and Exhibits Volume III - 23, 24, 25, 26, & 27); and b) Physical Injury: Life-threatening choking, hypoxia, and permanent physiological impairment, including the objective physical manifestation of psychological trauma (10% body weight loss) required for recovery under the MCPA (See *Sager v. Housing Commission of Anne Arundel County*, 855 F. Supp. 2d 524).

86. The conduct of Defendants was characterized by actual malice, manifesting as an evil motive and a deliberate disregard for the safety of the consuming public. At all times relevant, Defendants possessed actual knowledge that their manufacturing and quality control processes were insufficient to prevent the introduction of hazardous, thread-like contaminants into the subject food products (Exhibits Volume I - 3b, 3c, 4a, 4b, and Exhibits Volume III - 20a, 20b & 21). Despite this specific knowledge of the risk of severe injury—including acute airway obstruction and death—Defendants consciously elected to prioritize profit over consumer safety by distributing the adulterated products into the stream of commerce. This willful refusal to remedy

known defects constitutes a heinous deviation from standard safety protocols, justifying an award of punitive damages to punish Defendants and deter similar future misconduct.

87. Plaintiff alleges that Defendants acted with actual malice, characterized by an "evil motive" and a "deliberate disregard" for the safety of the consuming public. Defendants possessed specific knowledge of the manufacturing failure (the loss of PPE/industrial material during production) yet consciously elected to distribute Lot OC 4/2/2023; 23173020527 (Exhibit Volume I – 4b) without inspection or warning. This "conscious and deliberate" decision to ignore a high probability of injury justifies an award of punitive damages.

88. Defendants further violated the MCPA by representing the Product as "safe" or "all-natural" while maintaining manufacturing processes with documented histories and establishes a "pattern of conduct" of systemic failures. Specifically, Defendants' history includes: a) Settling class actions for mislabeling products (e.g., *DiFrancesco v. Utz Quality Foods, Inc.*, No. 1:14-cv-14744-DPW (D. Mass. 2014)) involving the presence of synthetic chemical contaminants; and b) Regulatory settlements regarding the presence of unwarned chemical byproducts (e.g., Acrylamide), establishing a pattern of failing to monitor the actual physical and chemical composition of the consumer goods they placed into the stream of commerce.

89. By omitting the risk of physical trauma and representing the Product as fit for consumption, Defendants intended for consumers, including Plaintiff, to rely on these deceptive representations.

90. Defendants' deceptive practices are part of a broader pattern of failing to monitor the physical and chemical composition of their consumer goods. This includes prior legal and regulatory scrutiny for mislabeling and the presence of synthetic contaminants (e.g., *DiFrancesco v. Utz Quality Foods, Inc.*, No. 1:14-cv-14744-DPW (D. Mass. 2014)), establishing

that Defendants knew or should have known of the systemic failures in their quality control processes, relating to an established "pattern of conduct".

91. Plaintiff did in fact rely on Defendants' representations of safety and quality when purchasing and consuming the Product. Plaintiff reasonably relied on Defendants' representations of safety and quality when purchasing the Product. Had Plaintiff known the Product contained a 59.2mm mechanical tether, he would not have purchased or consumed it.

92. As a direct and proximate result of Defendants' deceptive practices, Plaintiff sustained actual injury and loss, including severe physical trauma and the objective physical manifestation of psychological harm (e.g., >10% weight loss). As a result of these violations, Plaintiff is entitled to recover compensatory damages, costs, and—pursuant to Md. Code Ann., Com. Law § 13-408(b) - reasonable attorney's fees (to the extent they may be incurred should Plaintiff later retain counsel).

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount exceeding $75,000, plus costs and any other relief the Court deems just. (See "Prayer of Relief" Section for full details related to all Counts)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Charles Patrick Venanzi respectfully requests that this Court enter judgment in his favor and against Defendants Utz Quality Foods, LLC, Utz Brands, Inc., and Target Corporation, jointly and severally, and award the following relief:

a. Compensatory Economic Damages: An award for all past, present, and future medical expenses, including diagnostic testing, laryngeal treatment, neurological consultation for cranial nerve damage, and long-term therapy for chronic dysphagia, esophageal spasms, and Post-Traumatic Pseudodysphagia Phobia (ICD-10 Code: 300.29/F40.298/F60.298). i This award shall

include the present value of all future lost earning capacity and wages resulting from Plaintiff's permanent physiological and psychological impairments, and incidental expenses for medical monitoring, in an amount to be determined at trial but exceeding $75,000;

b. Compensatory Non-Economic Damages: An award for physical pain, suffering, mental anguish, and "traumatic neurosis" arising from the life-threatening choking incident. These damages have resulted in a documented and objective physical manifestation of injury—specifically a physiological decline exceeding 10% of total body weight—compensable under the standard established in *Belcher v. T. Rowe Price Foundation, Inc.*, 329 Md. 709 (1993). This award shall be in an amount to be determined at trial, subject to the statutory limitations set forth in Md. Code, Cts. & Jud. Proc. § 11-108;

c. Punitive Damages: An award of punitive damages in an amount sufficient to punish Defendants for conduct characterized by actual malice and a conscious, deliberate disregard for the safety of the consuming public. Plaintiff alleges that Defendants' decision to distribute the adulterated Product after knowledge of a manufacturing failure (loss of PPE/industrial material) meets the "clear and convincing" evidentiary standard required by *Owens-Illinois, Inc. v. Zenobia,* 325 Md. 420 (1992);

d. Interest: Pre-judgment and post-judgment interest at the maximum legal rate of 10% per annum (or the maximum permitted by law) pursuant to Md. Code, Cts. & Jud. Proc. § 11-107 and Maryland Rule 2-604;

e. Costs and Attorney's Fees: An award for the costs of this action, including filing fees and expert witness fees. Furthermore, pursuant to the Maryland Consumer Protection Act, Md. Code, Com. Law § 13-408(b), an award of reasonable attorney's fees should Plaintiff later retain counsel.; and

f. Additional Relief: Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, by and through pro se, pursuant to Maryland Rule 2-325, hereby elects a trial by jury on all issues triable of right by a jury in the above-captioned matter.

Dated:

Respectfully submitted,

5/1/2026

**Charles Patrick Venanzi,** *Plaintiff, Pro Se*

6416 Skipton Dr.
Hanover, MD 21076
Telephone: 410-353-1900
Email: chuckvenanzi@verizon.net